FILED

2008 Apr-30  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **WENDY CHAPMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) **2:07-CV-1493-VEH** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Wendy Chapman (hereinafter "Ms. Chapman") brings this action pursuant to 42 U.S.C. §§ 261(i) and 223 of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Chapman timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to § 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (2000).[1] As explained more fully below, the

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

court affirms the decision of the Commissioner.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Chapman was a 36-year-old woman at the time of her hearing before the administrative law judge ("ALJ"). (Tr. 15.) She has a limited 10th grade education. (*Id.*) Her past relevant work experiences have been as an insurance clerk, cafeteria worker, bobbin winder, and a stock clerk/salesperson. (*Id.*) Ms. Chapman claims she became disabled on March 31, 2004 due to hip replacement, osteoarthritis, osteoporosis, celiac disease, anemia, and a possible sleep disorder. (Tr. 15, 45.)

Ms. Chapman filed an application for a period of disability, DIB, and SSI payments on May 3, 2004. (Tr. 43.) The claims were denied by the Commissioner on September 3, 2004. (Tr. 34.) Ms. Chapman then filed a timely written request for a hearing on October 13, 2004. (Tr. 33.) The hearing was held on June 10, 2005. (Tr. 337.) The ALJ concluded that Ms. Chapman was not disabled and denied her application on October 4, 2005. (Tr. 20-21.)

Ms. Chapman timely requested a review of the ALJ's decision on November 23, 2005. (Tr. 10.) The Appeals Council denied Ms. Chapman's request for review on June 15, 2007. (Tr. 4.) The ALJ's decision thus became the Commissioner's final decision on that date. *Id.*

Ms. Chapman filed a Complaint on August 15, 2007, which asks this court to

review the ALJ's decision.  (Doc. 1.)  Ms. Chapman also filed a motion for *in forma pauperis* on August 15, 2007.  (Doc. 2.)  This court denied the request to proceed *in forma pauperis* on August 20, 2007.  This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  The court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth,* 703

---

[2]In general, the legal standards applies are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statues and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion shall be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

F.2d at 1239. Moreover, the reviewing court may not reweigh the evidence or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). While judicial review of the Commissioner's factual findings is limited to the substantial evidence standard, the court reviews the Commissioner's legal decisions *de novo* in evaluating claims. *See Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992); *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 27, 2008.

impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id*.

5

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Chapman has not engaged in substantial gainful activity since the alleged onset of her disability on March 31, 2004. (Tr. 16.)  She also found that Ms. Chapman's osteoporosis and osteoarthritis hip replacement, celiac disease, and anemia are considered "severe" based on the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c).  (Tr. 17.)  The ALJ then held that the medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404 subpt. P, app. 1, of the Regulations. *Id.*

The ALJ determined that Ms. Chapman "retains . . . the capacity [to] lift/ carry up to 20 pounds occasionally and ten pounds frequently and sitting, standing, and walking with changes in position on an as-needed basis throughout an 8-hour workday." (Tr. 18.)  The ALJ also determined that the work should not be "on uneven surfaces" and should include "no more than simple tasks at a routine pace due to concentration deficits caused by pain and medication side effects and overall physical deconditioning." (*Id.*)

The ALJ found, relying upon vocational expert testimony, that Ms. Chapman's impairments prevent her from performing her past relevant work. (Tr. 20.) Relatedly however, the ALJ then determined that Ms. Chapman's residual functioning capacity

6

allows her to perform unskilled work at the light exertional level.[4]  (*Id.*)  Based again upon the testimony from the vocational expert, the ALJ decided that a significant number of jobs exist in the Birmingham metropolitan area and in the national economy that Ms. Chapman can perform, including occupations as a hand packager, ticket seller, and a parts assembler.  (*Id.*)

The vocational expert also noted that if, as alleged, Ms. Chapman were unable to type or have computer skills, was a slow learner, and had problems with nausea, maintaining focus, and the need to lie down 5-7 times a day for an hour at a time, she "would be incapable of sustaining full-time work activity at any level of exertion." (Tr. 19.)  The ALJ, however, found that these alleged restrictions by Ms. Chapman were not supported by substantial evidence and rejected finding any disabled status based upon the hypothetical question.  (*Id.*)

The ALJ concluded that Ms. Chapman was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act.  (Tr. 20.)  Similarly, with respect to

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  A job could require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  *Id.*

her application for SSI, Ms. Chapman was not disabled under §§ 1602 and 1614(a)(3)(A) of the Social Security Act.  (Tr. 21.)

## ANALYSIS

Ms. Chapman asserts that "substantial evidence does not support the decision denying disability benefits and improper legal standards were applied."  (Doc. 8 at 4.)

## A.   The ALJ fully and fairly developed the record.

Ms. Chapman asserts that "the ALJ has failed in her duty to develop a full and fair record."  (Doc. 8 at 15.)  Ms. Chapman states that the ALJ's duty to probe into all relevant facts included asking proper hypothetical questions to the vocational expert when the attorney for Ms. Chapman was struggling.  (Doc. 8 at 13-15.) Specifically, Ms. Chapman claims that the "ALJ was . . . more concerned with form than with justice because she indicated to the attorney for the plaintiff that hypothetical questions [directed to the vocational expert during the hearing] must be phrased specifically."  (Doc. 8 at 14.)  As a result, "critical questioning of the vocational expert concerning the established limitations and capabilities of the plaintiff were never asked."  (Doc. 8 at 14.)  In support of her claim, Ms. Chapman relies on *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995), and *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

8

The ALJ has a basic obligation to develop a full and fair record. A full and fair record not only ensures that the ALJ has fulfilled his "duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," but it also enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *See Welch v. Bowen,* 854 F.2d 436, 440 (11th Cir. 1988) (internal quotations and citations omitted).

Ms. Chapman relies upon *Brown v. Shalala*, 44 F.3d at 934, in which the Eleventh Circuit determined that the ALJ had not developed a full and fair record. In *Brown*, the claimant was not represented, and recent medical and vocational records were not obtained by the ALJ which might have sustained the plaintiff's contentions of her inability to work. *Id.* at 935. These were evidentiary gaps which resulted in unfairness or clear prejudice. *Id.* However, the Eleventh Circuit specified that a remand is not warranted any time a claimant alleges that the ALJ fails to complete the record. *Id.* at 936 n. 9. There must be a likelihood of unfair prejudice that the evidence might lend credence to the claimant's allegations. *Id.*

Ms. Chapman also relies upon the holding in *Cowart v. Schweiker*, 662 F.2d at 735. An ALJ must be especially diligent in ensuring favorable and unfavorable facts are elicited when a claimant is unrepresented. *Id.* As evidenced by the fact that the ALJ did not question the claimant's husband when he was readily available at the

9

hearing, the Eleventh Circuit found that the ALJ in *Cowart* made little or no effort to find facts favorable to the claimant and therefore did not fully develop the record. *Id.*

Ms. Chapman was adequately represented in her hearing. Unlike *Brown*, the Ms. Chapman does not allege that there are any missing medical or vocational records. Unlike *Cowart*, the ALJ did question all available and relevant persons regarding Ms. Chapman's claim. Ms. Chapman merely claims that the ALJ should have asked questions of the vocational expert since her former attorney was unable to effectively do so. (Doc. 8 at 15.) Assuming that Ms. Chapman's attorney did have difficulty asking appropriate vocational questions, the ALJ asked several hypothetical questions to the vocational expert as well. (*See generally* Tr. 366-373.)

Moreover, the lack of further questioning by the ALJ did not result in unfair prejudice. For example, there is no evidence that any limited questioning by Ms. Chapman's attorney prevented the ALJ from exploring all the relevant facts and receiving relevant answers from the vocational expert. Instead, the ALJ probed into areas the answers to which were both favorable and unfavorable to the claimant. Specifically, she asked questions to clarify the record evidence on jobs which do not require computer skills and also permit for alternating positions from sitting to standing. (*See generally* Tr. 367-369.) As the ALJ did receive expert information regarding Ms. Chapman's ability to work full-time and no clear prejudice exists, she

10

met her duty to fully and fairly develop the record.

### B.   The ALJ reasonably concluded through substantial evidence that Ms. Chapman was not disabled.

Ms. Chapman claims that the ALJ should have afforded more weight to the opinion of her treating physician, Dr. Vlad Prelipcean, rather than the report of a reviewing physician, Dr. Stuart Stephenson, III.  (Doc. 8 at 4.)  She states that "the opinion of a non-examining reviewing physician is entitled to little weight and, taken, alone, does not constitute substantial evidence to support an administrative decision." (Doc. 8 at 12 (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990)).)

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision, but the court should not attempt to reweigh the evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The weight afforded a physician's conclusions regarding a claimant depends upon the extent to which statements are supported by clinical or laboratory findings and are consistent with other evidence of record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004);

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  A doctor's opinion should be given controlling weight only if it is consistent "with other substantial evidence in [Plaintiff's] case record. . . ." 20 C.F.R. § 404.1527(d)(2).  "Generally, the more consistent an opinion is with the record as a whole, the more weight [that opinion shall be accorded]." 20 C.F.R. § 404.1527(d)(4).  The Regulations provide that the supportability of a physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and the degree to which the opinion is internally consistent and consistent with other evidence. *See* 20 C.F.R. § 416.1527(a), (b), (c)(2), and (d)(3)-(4).

The opinion of a treating physician as to the plaintiff's condition and the medical consequences thereof is entitled to deference, absent good cause. *See* 20 C.F.R. §§ 404.1527, 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists where the treating physician's opinion is "not bolstered by the evidence", where the "evidence support[s] a contrary finding", or where the "opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (2004).  If there is incompatible evidence, the Supreme Court has stated that "[t]he trier of fact has the duty to resolve" the contest between "conflicting medical evidence." *Richardson v. Perales*, 402 U.S.

12

389, 399 (1971).

Ms. Chapman's treating physician, Dr. Prelipcean, did indicate in a letter on September 29, 2004, that Ms. Chapman should "not return to work at this time." (Tr. 248.)  However, the ALJ properly reasoned that Dr. Prelipcean did not provide any reasons for his opinion other than stating that Ms. Chapman would be on anticoagulation treatment for at least a year. (Tr. 18; *see also* Tr. 248.)  Likewise, the physical capacities evaluation form which Dr. Prelipcean completed on May 5, 2005, fails to provide any explanation for the limitations specified.  (Tr. 18; *see also* Tr. 256-57.)

Moreover, on a Supplemental Questionnaire as to Residual Functional Capacity form also dated May 5, 2005, Dr. Prelipcean indicated that while Ms. Chapman would have certain limitations "on a sustained basis in a routine work setting[,]" these limitations would only be moderate or mild.  (Tr. 253-254.)  Dr. Prelipcean also reported in on the Physical Capacities Evaluation form that Ms. Chapman would be able to sit three hours a day, stand three hours a day, and walk two hours a day for work.  (Tr. 256.)  Dr. Prelipcean added that Ms. Chapman is able to lift or carry ten pounds occasionally and five pounds frequently.  *Id.*

Dr. Stephenson, the reviewing physician, used all the gathered evidence to make his assessment that Ms. Chapman would be able to work with limitations.  (Tr.

18.)  For example, he pointed out that Ms. Chapman does light housekeeping and even returned to work after the diagnosis of many of her problems.  (Tr. 171.) Therefore, based upon the inadequate explanations and contradictions about Ms. Chapman's ability to work, including within the totality of Dr. Prelipcean's medical records, the ALJ had substantial evidence to properly discount Dr. Prelipcean's September 2004 opinion concerning Ms. Chapman's inability to return to work.  (Tr. 18.)

### C.    The ALJ applied the correct legal standard in determining that Ms. Chapman was not disabled.

Ms. Chapman claims that the ALJ applied an improper legal standard in reaching her decision.  (Doc. 8 at 4.)  The proper legal standard for determining whether a claimant is disabled is set forth above in this opinion.  (*See* Statutory and Regulatory Framework, *supra* at 4-5.)

The ALJ applied the proper legal standard in concluding that Ms. Chapman is not disabled within the meaning of the Social Security Act.  (20 C.F.R. § 404.1520(a)(4)).  First, the ALJ found that Ms. Chapman had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 19.) Second, the ALJ found that Ms. Chapman's impairments of osteoporosis, osteoarthritis status post hip replacement, celiac disease, and anemia are considered "severe" based on the

14

requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (Tr. 20.)  Third, the ALJ

determined that Ms. Chapman's impairments do not meet or medically equal any of

the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1.  (Tr. 20.)

Fourth, the ALJ found that Ms. Chapman's residual functioning capacity

allowed her to perform work at the light exertional level with limitations, though she

is not capable of performing any of her past relevant work.  (Tr. 20.)  Fifth and

finally, the ALJ concluded that, based upon the vocational expert's testimony, jobs

existing in the national economy available to Ms. Chapman include occupations such

as hand packager and parts assembler.  *Id.*  Reliance upon testimony from the

vocational expert is appropriate as "[i]n this Circuit, the preferred method of

demonstrating job availability where a plaintiff is unable to perform a full range of

work at a given functional level or when a claimant has both exertional and

nonexertional limitations is through the testimony of a vocational expert."  *Byrd v.*

*Apfel*, No. Civ. A. 95-0218-RV-S, 2000 WL 726212, at *7 (S.D. Ala. Apr. 28, 2000)

(citing *Welch v. Bowen,* 854 F.2d 436, 439-440 (11th Cir. 1986)).

Therefore, the ALJ determined that Ms. Chapman cannot be considered

disabled under the definition of disability provided in the Social Security Act because

she failed the five-point test under sections (3) and (5).  Accordingly, the ALJ applied

the proper legal standard in concluding that Ms. Chapman is not disabled, and the

decision of the Commissioner is due to be affirmed.

## CONCLUSION

Based upon its evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 30th day of April, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16